**DELUXE CORPORATION,**
Plaintiff–Appellant,

v.

**The UNITED STATES,**
Defendant/Cross–Appellant.

Nos. 88–1628, 88–1629.

United States Court of Appeals,
Federal Circuit.

Sept. 12, 1989.

Phillip H. Martin, Dorsey & Whitney, of Minneapolis, Minn., argued for plaintiff-appellant. With him on the brief was Thomas D. Vander Molen.

Kenneth W. Rosenberg, Dept. of Justice, of Washington, D.C., argued for defendant/cross-appellant. With him on the brief were William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen and David I. Pincus.

Before MARKEY, Chief Judge, NEWMAN and MICHEL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Deluxe Corporation ("the Corporation") appeals the judgment of the United States Claims Court, *Deluxe Check Printers, Inc. v. United States*, 14 Cl.Ct. 782 (1988) and supplemental opinion at 15 Cl.Ct. 175 (1988), granting the United States' motion for summary judgment with respect to the Corporation's liability for certain internal revenue excise taxes under the provisions of 26 U.S.C. § 4941.[1] The United States cross-appeals the grant of partial summary judgment in favor of the Corporation with respect to the refund of interest. The material facts are not in dispute; we review the judgment for correctness in law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beta Systems, Inc. v. United States*, 838 F.2d 1179, 1184 (Fed.Cir.1988).

We reverse the judgment as to liability and affirm as to the interest payment.

*Background*

At issue are certain tax consequences of transactions between the Corporation and Deluxe Check Printers Foundation ("the Foundation"), a private non-profit foundation in the category of 26 U.S.C. § 501(c)(3). In accordance with a Treasury Share Acquisition Program ("the Program") estab-

lished by the Corporation in 1966, the Corporation was authorized to purchase outstanding shares of its common stock in transactions, based on current market prices, on the over-the-counter market and in negotiated purchases off the market. The resolution governing the Program provided, *inter alia,* that no purchases were to be made from officers or directors of the Corporation. There were purchased, from 1966 through 1979, 1,721,133 shares in 39,406 separate transactions, none with any officer or director.

The Foundation had received over 75,000 shares of the Corporation's stock in 1974 through distribution of a testamentary charitable remainder trust. For purposes of diversification and yield, the Foundation submitted and the Corporation redeemed a total of 75,000 shares in six unsolicited transactions in 1976 and 1977. In each transaction the Corporation paid the mean between the over-the-counter bid and asked prices as of the close of the previous day's business. In 1976 these transactions with the Foundation represented three of a total of 4,394 separate transactions, and 45,000 of a total of 207,676 shares redeemed; in 1977, the Corporation redeemed 350,599 shares in 5,460 transactions, the three transactions with the Foundation involving 30,000 shares.

Code § 4941 imposes, as the first tier of a three-tier penalty system designed to deter self-dealing, excise taxes on acts of self-dealing between a disqualified person and a private foundation. It is uncontroverted that the Corporation, which was a substantial contributor as defined in Code § 507(d)(2)(A), was a disqualified person under Code § 4946(a)(1)(A). The Corporation filed excise tax returns pursuant to Code §§ 4941(a)(1) and (e)(1) and paid the taxes, as required by Treas. Reg. §§ 53.6011-1(b) and 53.6071-1, for calendar years 1976, 1977, and 1978; and duly filed claims for refund. The excise tax on self-dealing accrues annually on each act of self-dealing until a notice of deficiency is mailed or

---

1. The years at issue are governed by the Internal Revenue Code of 1954, as amended (the "Code"). Section 4941 was added in 1969, Pub.L. 91–172, title I, § 101(b), 83 Stat. 499 codified as 26 U.S.C. § 4941.

until correction of the self-dealing is completed. Code § 4941(a)(1) and 4941(e)(1). Thus, the return for calendar year 1977 included excise taxes for the 1977 transactions and the 1976 transactions; similarly, the 1978 return included excise taxes for the 1977 and 1976 transactions. In 1981 the Internal Revenue Service assessed a $3,831.37 interest payment against the Corporation due to the one-year delay in payment of the excise taxes owed for calendar year 1976.

In 1982 the IRS disallowed the claims for refund. The Corporation filed a timely complaint in the Claims Court.

The Claims Court held that the redemptions were acts of self-dealing and were not corrected. The court also held that since this excise tax was a penalty, the interest assessment was improper.

Each side appeals the portion of the judgment adverse to it.

## Discussion

The Corporation states that these transactions are a statutory exception to acts of self-dealing. Pertinent Code sections are § 4941(d)(1)(A):

> For purposes of this section, the term "self-dealing" means any direct or indirect ... sale or exchange ... of property between a private foundation and a disqualified person....

with the exception established in Code § 4941(d)(2)(F):

> any transaction between a private foundation and a corporation which is a disqualified person (as defined in section 4946(a)), pursuant to any liquidation, merger, redemption, recapitalization, or other corporate adjustment, organization, or reorganization, shall not be an act of self-dealing if all of the securities of the same class as that held by the foundation are subject to the same terms and such terms provide for receipt by the foundation of no less than fair market value.

The issue of liability turns on whether the requirements of Code § 4941(d)(2)(F) were met, when the Corporation's officers and directors were expressly excluded from participation in the Program.

A

■ The Claims Court stated that the statutory exceptions to self-dealing must be strictly construed, for the overall statutory purpose is "an objective general prohibition against self-dealing". 14 Cl.Ct. at 789. Thus the Claims Court held that the Program's prohibition against purchases from officers and directors means that all shares were not "subject to the same terms", in the words of the statute.

The Corporation argues that the statute requires that the shares that are actually redeemed must all be subject to the same terms, and that the Program's exclusion of participation by officers and directors does not change its compliance with the statutory purpose that all who redeem shall receive fair market value and any other terms of redemption, applied identically. The government responds that the statute requires that all outstanding stock of the redeemed class, without exception, must be entitled to redemption on the same terms, and that the Corporation's exclusion of its officers and directors from access to this Program bars the Corporation from qualifying for the exception set in Code § 4941(d)(2)(F).

In this matter of statutory interpretation, where the text itself does not clearly exclude alternate interpretations, we look first to the legislative history for illumination of the intent of Congress. *See, e.g., Shriners Hospitals v. United States,* 862 F.2d 1561, 1563 (Fed.Cir.1988) (consulting legislative history).

The prohibitions against self-dealing were enacted in 1969, for the purposes of protecting private foundations against improper acts by those who control the foundation, and curtailing possible abuse of the foundation's tax-exempt status. H.R.Rep. No. 413, 91st Cong., 1st. Sess. 20–21, *reprinted in* 1969 U.S.Code Cong. & Admin. News 1645, 1665; S.Rep. No. 552, 91st Cong., 1st Sess. 28–29, *reprinted in* 1969 U.S.Code Cong. & Admin.News 2027, 2055. Nevertheless, as the Treasury explained when it endorsed the bill, *see Hearings*

*Before the Committee on Ways and Means, 91st Cong., 1st Sess. on the Subject of Tax Reform*, pt. 14 at 5059 (1969), a self-dealing exception "would be made to permit essential donor-foundation transactions." *Id.* at 5322. Congress expressly rejected an absolute prohibition against transactions between a private foundation and a disqualified person. However, the standard of the prior law, which had authorized arm's-length transactions with a disqualified person, was superseded by the present text of § 4941(d)(2)(F).

Congress declined to elaborate, in the statutory text, on the meaning of "subject to the same terms", although such was requested in testimony during hearings. *See Tax Reform Act of 1969: Hearings on H.R. 13270 Before the Senate Committee on Finance*, 91st Cong., 1st Sess. 5759, 5764, 5976 (1969). The absence of detail from a statutory text, or Congressional reluctance to legislate for all possible future situations, does not mean that Congress thereby intended to adopt a policy intolerant of adaptive interpretation. It is still the original intent of Congress, as gleaned from the official history and accompanying explanation, to which we look in the first instance. From this background, it is clear that the purpose of the requirement that all shares be "subject to the same terms", § 4941(d)(2)(F), is to assure that a foundation's status is not abused, whether the transaction is "liquidation, merger, redemption, recapitalization, or other corporate adjustment, organization or reorganization", so that a foundation does not receive less advantageous terms than any other shareholder when dealing with a disqualified person. *See* S.Rep. No. 552, *supra*, at 28–29, 31, *reprinted* at 2055–58.

The Corporation states that its prohibition of participation in the Program by officers and directors was both to avoid any appearance of impropriety and to avoid any opportunity for impropriety on the part of those conducting the Program, and has no impact on the Corporation's treatment on the same terms of all shares tendered for redemption. The Corporation argues that this prohibition simply recognizes the statutory restraints on officers and directors in dealing in their corporation's stock.

The Corporation asserts, without contradiction, that "it is common to exclude officers and directors from corporate buy-back programs". Other encumbrances on officers and directors recited by the Corporation as effectively barring their treatment on "the same terms", even if they were not expressly excluded from the Program, relate to short-swing profits under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) and Code § 83(c)(3); sale of stock under SEC Rule 144, 17 C.F.R. § 230.144; and insider trading limitations under SEC Rule 10b–5, 17 C.F.R. § 240.10b–5; *see also* SEC Regulations S–K & 14A, 17 C.F.R. §§ 229.404 and 240.-14a–3.

In applying Code § 4941(d)(2)(F) to this situation, we can not ignore that by operation of law securities transactions involving officers and directors are not treated identically to other transactions, whether or not they are nominally subject to the same terms. Although officers and directors may hold the same class of stock as other shareholders, due to their extensive regulation while they are officers and directors their behavior as shareholders is circumscribed, from the practical and legal viewpoint. *See, e.g., Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L.Ed.2d 575 (1972) ("the only method Congress deemed effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great.... 'Such arbitrary and sweeping coverage was deemed necessary to insure the optimum prophylactic effect.'") (quoting *Bershad v. McDonough*, 428 F.2d 693, 696 (7th Cir.1970)).

The failure of § 4941(d)(2)(F) to treat this distinction in its text does not mean that Congress intended to present a conflict with the securities laws, or otherwise to make § 4941(d)(2)(F) unworkable when the disqualified person is a corporation whose officers and directors may be shareholders.

*See American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible.")

The self-dealing rules were designed to protect assets dedicated to charitable purposes, and thus enjoying exemption from tax, from manipulation to the benefit of disqualified persons. *See, e.g.,* S.Rep. No. 552, *supra,* at 6, *reprinted* at 2032. The underlying theme of the self-dealing rules is to protect against abuse by insiders. The Program's ban on participation by officers and directors was based on their position as insiders, not on their position as shareholders. The restraint against officers and directors is in harmony with, if not furtherance of, the statutory purpose of preventing those in positions of control of a disqualified person from using such position for prohibited purpose. The Program simply makes explicit what is implicit, and the exclusion of the Corporation's officers and directors from the Program is a reasonable response to the existence of laws and rules that affect any stock transaction by officers and directors. This exclusion does not affect the terms to which all shares are subject. It is not the shares that are under restraint, but these specific insiders, and only for as long as they are officers and directors.

We conclude that the intent of Congress to prohibit self-dealing is served by accommodating the impact of the securities laws on shareholding insiders. The text "subject to the same terms" does not require a corporation which is a disqualified person to include in a redemption program those shares held by its officers and directors. We hold that the express exclusion of such persons from participation in the Program does not negate compliance with Code § 4941(d)(2)(F). The Claims Court's ruling to the contrary was in error.

### B

■ The Claims Court reasoned that Treasury Regulation 26 C.F.R. § 53.4941(d)–3(d)(1) reinforces the view that exclusion of officers and directors removed the Program from compliance. In pertinent part the regulation states:

> [A]ll securities are not "subject to the same terms["] unless, pursuant to such transaction, [ ] the corporation makes a bona fide offer on a uniform basis to the foundation and every other person who holds such securities.

The Claims Court rejected the government's contention that a separate written offer must be made to each shareholder every time a sale is contemplated. We agree with the court that such would impose an unreasonable burden, and that the notices in the Corporation's annual and other reports to shareholders served the statutory purpose. This purpose of preventing potential fraud is met by announcing the offer in documents reasonably disseminated to all shareholders.

However, the Claims Court also reasoned that since the regulation requires a "bona fide offer on a uniform basis" to every shareholder, and that since the Program itself forbade the participation of shareholders who were officers and directors, this requirement was not met.

The Claims Court's interpretation of this regulation, as applied to the voluntary redemption program here at issue, exceeds the statutory requirement. Whether this interpretation is apt with respect to a liquidation or merger, for example, is not before us. However, as applied by the Claims Court, and as pressed by the government on this appeal, such interpretation must invalidate the regulation, if such interpretation would bar all limitation of participation of shareholders who are officers and directors, in potential conflict with the securities laws. As discussed in Part A, *supra,* the statute itself does not require such unlimited participation. We do not believe it accords with the legislative intent to require that the Corporation can not reflect in its Program the pragmatic fact that officers and directors are variously restrained and regulated in transactions in the stock of the company they serve. We discern neither public nor Congressional purpose in such an interpretation. In-

deed, the private letter rulings cited by the Corporation, although not relied upon in our conclusion, are in accord with our view, and illustrate the Treasury's administration of the statute in a manner less rigorous than that here pressed.

A regulation serves to implement the law, not to change it. *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982):

> This Court has firmly rejected the suggestion that a regulation is to be sustained simply because it is not "technically inconsistent" with the statutory language, when that regulation is fundamentally at odds with the manifest congressional design. *United States v. Cartwright*, [411 U.S. 546], 557 [93 S.Ct. 1713, 1719, 36 L.Ed.2d 528 (1973)]. The challenged Regulation is not a reasonable statutory interpretation unless it harmonizes with the statute's "origin and purpose." *National Muffler Dealers Assn., Inc. v. United States,* [440 U.S. 472], 477 [99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979)].

*See also, e.g., Northeastern Pennsylvania National Bank & Trust Co. v. United States,* 387 U.S. 213, 220–22, 87 S.Ct. 1573, 1577–79, 18 L.Ed.2d 726 (1967) (Treasury Regulation can not be applied in a way that improperly implements congressional intent as embodied in the Code, interpreting estate tax marital deduction).

We conclude that regulation 26 C.F.R. § 53.4901(d)–3(d)(1) does not require that shareholders who are officers and directors must be included in this Program.

### C

█ The Claims Court held that the Corporation had not demonstrated that the terms of the Program redemptions met the statutory requirement of "no less than fair market value". The United States had conceded that by redeeming shares at the mean of the bid and asked prices as of the previous day's close of business, the Foundation received at least the value it would have received by sale on the over-the-counter market.

The procedure followed is in accord with Treas.Reg. §§ 53.4941(e)–1(f), which incorporates Treas.Reg. § 53.4942(a)–2(c)(4)(i)(*a*) ("any reasonable method to determine fair market value ... as long as such method is consistently used"). It is not challenged by the government. We conclude that the procedure followed is in accordance with law, and that the redemptions were at no less than fair market value. The Claims Court's ruling to the contrary was in error.

### D

A subsidiary question before the Claims Court was whether, if Code § 4941 was violated by the redemptions in 1976 and 1977, such violations were corrected by various corrective actions of the Corporation, taken for the purpose of limiting any possible liability to the taxable years in which the prohibited acts occurred. Code §§ 4941(a)(1) and 4941(e)(1). Because of our disposition of the issue of self-dealing, we do not reach the alternate issue of the adequacy of these corrective actions.

### II

The government appeals the Claims Court's judgment that the Corporation recover the interest assessed for the delay in paying its self-assessed excise tax for 1976, plus recovery of statutory interest on the interest paid. The Claims Court held that the excise tax was a penalty for purposes of accrual of interest, and thus not subject to interest absent notice and demand for payment of the tax. "Interest shall be imposed ... in respect of any assessable penalty ... only if such assessable penalty ... is not paid within 10 days from the date of notice and demand therefor...." Code § 6601(e)(2). No notice or demand was issued.

We do not reach the question of whether this tax was correctly deemed a penalty for purposes of § 6601. In view of our decision that there is no liability for excise tax under Code § 4941(a), there is no obligation of interest for untimely payment. On this ground the judgment of the Claims Court ordering refund of the interest paid, plus interest, is affirmed.

### Conclusion

The judgment holding the Corporation liable for excise taxes under Code § 4941(a) is reversed. The Corporation shall recover the taxes paid with interest as provided by law.

On the government's cross-appeal, the judgment granting refund of the interest paid with interest thereon is affirmed.

### Costs

Costs to the Corporation.

AFFIRMED IN PART, REVERSED IN PART.