**TEXAS EASTERN CORPORATION, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 326–87T.**

United States Claims Court.

Oct. 11, 1989.

Donald F. Wood, Houston, Tex., for plaintiffs. R. Todd Greenwalt, of counsel.

---

Mildred L. Seidman, with whom was Asst. Atty. Gen. Shirley D. Peterson, Washington, D.C., for defendant.

## OPINION

ANDEWELT, Judge.

In this tax action, plaintiffs, Texas Eastern Corporation and Affiliates (Texas Eastern), seek a tax refund covering tax years 1970 through 1974. This action is presently before the court on cross-motions for summary judgment. The central issue raised is one of first impression. It involves the calculation of statutory interest on tax overpayments in a situation where the Internal Revenue Service (the IRS) initially credited (*i.e.*, offset) overpayments for certain tax years against perceived deficiencies for other tax years but then later determined that no such deficiencies ever existed. The parties disagree as to whether and to what extent plaintiffs should be deemed to have paid deficiency interest in the course of the crediting process. To the extent deficiency interest was erroneously paid, plaintiffs would be entitled to receive statutory interest on those payments. The parties agree that there are no material issues of fact in dispute and that this court can resolve this issue on summary judgment. Furthermore, the parties indicated they likely would be able to stipulate as to the refund due plaintiffs based on this court's decision.

## I.

In 1979, the IRS completed two audits of plaintiffs' tax returns for tax years 1970 through 1974 and concluded that plaintiffs had underpaid their taxes in 1970, 1973, and 1974, and had overpaid their taxes in 1971 and 1972,[1] as follows:

|      | Deficiency    | Overassessment |
|------|---------------|----------------|
| 1970 | $   943,214.65 |                |
| 1971 |               | $ 9,916,143.21 |
| 1972 |               | 10,208,623.06  |
| 1973 | 6,264,347.14  |                |
| 1974 | 10,553,859.77 |                |

To determine the amount of money owed plaintiffs, the IRS offset the overas-

sessments in 1971 and 1972 against the proposed deficiencies for 1970, 1973, and 1974. It offset the proposed deficiencies for 1970 ($943,214.65) and 1973 ($6,264,-347.14) plus a portion of the proposed deficiency for 1974 ($2,708,581.42) against the $9,916,143.21 overassessment in 1971. The remaining portion of the proposed deficiency for 1974 ($7,845,278.35) was offset against an equal portion of the $10,208,-623.06 overassessment in 1972. The IRS refunded to plaintiffs the remaining $2,363,344.71 in overassessments for 1972 together with $3,062,345.76 in statutory interest.

The 1979 offset and refund by the IRS did not preclude plaintiffs from continuing to pursue claims for tax years 1970 through 1974, and plaintiffs did pursue certain additional depreciation-related deductions for each of the five tax years. Ultimately, the IRS agreed to these deductions. On March 21, 1983, the parties agreed, in effect, that as a result of these additional deductions, the IRS's 1979 calculations of deficiencies and overassessments did not reflect plaintiffs' true tax liability and that the correct classification of plaintiffs' tax payments for tax years 1970 through 1974 is as follows:

|      | Deficiency    | Overassessment |
|------|---------------|----------------|
| 1970 |               | $   589,773.11 |
| 1971 |               | 12,020,372.23  |
| 1972 |               | 11,473,928.12  |
| 1973 |               | 7,482,468.75   |
| 1974 | $ 5,557,478.84 |                |

Thus, comparing the 1983 figures with the 1979 calculations, the original tax payments made for 1970 and 1973 were reclassified from deficiencies to overassessments, the amounts of the overassessments for 1971 and 1972 were increased, and the amount of the deficiency for 1974 was decreased. In recalculating the taxes due based on the new 1983 figures, the parties agreed that the total amount of overpayments for 1970 through 1974 was $26,-009,063.37, or $23,645,718.66 in excess of the amount of overpayments refunded to

---

1. The first audit involved tax years 1970, 1971, and 1972 and the second audit involved tax years 1973 and 1974.

plaintiffs in 1979. The IRS refunded these additional overassessed taxes together with interest thereon, as follows:

| | Overassessed Taxes [2] | Interest Allowed |
|---|---|---|
| 1970 | $ 1,532,987.76 | $ 1,810,806.96 |
| 1971 | 2,104,229.02 | 2,408,928.74 |
| 1972 | 1,265,305.06 | 1,366,807.92 |
| 1973 | 13,746,815.89 | 13,878,753.03 |
| 1974 | 4,996,380.93 | 4,691,344.78 |

Thus, in 1979 and 1983, the IRS refunded to plaintiffs a combined total of $26,009,-063.37 in overassessed taxes and $27,218,-987.19 in statutory interest.

There is no dispute that in 1979 and 1983 the IRS returned to plaintiffs all of the overpaid taxes for 1970 through 1974. Rather, the dispute herein relates to the amount of statutory interest due plaintiffs. For purposes of resolution of the central issue raised in the parties' cross-motions for summary judgment, plaintiffs do not dispute that they received the correct amount of interest on the monies they originally had overpaid in taxes, *i.e.*, that they received interest on the 1970 through 1974 overpayments for the time period when the IRS retained the overpaid funds. Instead, plaintiffs contend that the IRS incurred a distinct obligation to pay additional interest when in 1979 it erroneously offset the overpayments against perceived deficiencies. As explained below, plaintiffs contend, in effect, that the process of the 1979 offset resulted in plaintiffs paying deficiency interest on deficiencies that did not exist, and that controlling statutes and regulations require the IRS to pay statutory interest

on such erroneous payments of deficiency interest.

## II.

In general, the Internal Revenue Code (the Code)[3] provides that taxpayers who underpay their taxes must pay interest to the IRS (deficiency interest) on the amount of underpayment and taxpayers who overpay their taxes are entitled to receive interest from the IRS (statutory interest) on the amount of overpayment. Section 6601 of the Code covers deficiency interest and obliges the taxpayer to pay interest on an underpayment from "the last date prescribed for payment ... to the date paid" (Section 6601(a)). Section 6611 of the Code covers statutory interest and obliges the IRS to pay interest on "overpayments" (Section 6611(a)). Section 301.6611–1(b) of the Treasury Regulations on Procedure establishes the general rule that statutory interest commences on the date that payments by the taxpayer to the IRS exceed the amount the taxpayer is finally determined to owe the IRS.[4]

The interest rate for statutory and deficiency interest has varied, but up until 1987 the two rates did not differ from each other.[5] In addition, until January 1, 1983, the Code provided that interest on both deficiencies and overpayments would be simple interest. In 1982, the Code was amended to provide for compound interest

---

**2.** As an example of how the amount of the overassessments were calculated, for 1973, the 1979 audit concluded that there was a deficit of $6,264,347.14 and the 1983 audit determined that plaintiffs actually overpaid their 1973 taxes by $7,482,468.75. The difference between these two sums is $13,746,815.89. The IRS refunded that amount to plaintiffs in 1983 together with statutory interest thereon.

**3.** Although Section 2 of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, redesignated the Internal Revenue Code of 1954 "as heretofore, hereby, or hereafter amended" the "Internal Revenue Code of 1986," the tax periods at issue in this case antedate the Tax Reform Act of 1986. Accordingly, for clarity, references to the operative Internal Revenue Code provisions relevant to this proceeding will be to the Internal Revenue Code of 1954 (26 U.S.C.).

**4.** Section 301.6611–1(b) states, in pertinent part:

[T]here can be no overpayment of tax until the entire tax liability has been satisfied. Therefore, the dates of overpayment of any tax are the date of payment of the first amount which (when added to previous payments) is in excess of the tax liability (including any interest, addition to the tax, or additional amount) and the dates of payment of all amounts subsequently paid with respect to such tax liability.

**5.** In 1986, the rate for underpayments was increased by one percent over the overpayment rate, effective after December 31, 1986. Section 6621, as amended by Tax Reform Act of 1986, Pub.L. 99–514, Title XV §§ 1511(a), (c)(1), 1535(a)(1), Oct. 22, 1986, 100 Stat. 2744, 2750.

after December 31, 1982.[6]

In situations where a taxpayer has overpaid taxes for certain tax years and underpaid taxes for other tax years, Section 6402(a) sets forth the general rule that the IRS may credit (*i.e.*, offset) overpayments against deficiencies, as follows:

(a) *General Rule.*—In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person.

Sections 6601(g)[7] and 6611(b) discuss the calculation of interest when overpayments are offset against deficiencies. Section 6601(g) provides:

(g) *Satisfaction of Credits.*—If any portion of a tax is satisfied by credit of an overpayment, then no interest shall be imposed under this section on the portion of the tax so satisfied for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment.

Section 6611(b) provides that interest on the overpayment shall be allowed and paid "[i]n the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken."

### III.

In the brief accompanying their motion for summary judgment, plaintiffs explain their contention that they are entitled to receive additional interest payments essentially as follows. Interest accrues on over-

**6.** Section 6622; added by Pub.L. 97–248, Title III, § 344(a), Sept. 3, 1982, 96 Stat. 635; effective after Dec. 31, 1982.

**7.** Section 6601(g) was redesignated as Section 6601(f) by Section 7(b)(1), Act of January 3, 1975, Pub.L. No. 93–625, 88 Stat. 2108, effective on July 1, 1975.

**8.** Example (2) is as follows:

Corporation Y files an income tax return for the calendar year 1954 on March 15, 1955, disclosing a tax liability of $50,000, and elects to pay the tax in installments. On October 15, 1956, a deficiency in the amount of $10,000 is

payments pursuant to Section 6611(a) and on deficiencies pursuant to Section 6601(a). When an overpayment is credited against a deficiency pursuant to Section 6601(g), not only is the deficiency offset against the overpayment, but, in effect, the interest that has accrued pursuant to Section 6601(a) on the deficiency is offset against the interest that has accrued pursuant to Section 6611(a) on the overpayment. The IRS acknowledged in 1979 that there had been large overpayments in 1971 and 1972. However, rather than returning all of the overpaid funds to plaintiffs with statutory interest, the IRS retained certain of these funds and related interest and used them to offset the perceived deficiencies and related deficiency interest for tax years 1970, 1973, and 1974. This offset, plaintiffs argue, in effect, resulted in the IRS in 1979 using principal and interest owed plaintiffs to "pay" for the deficiencies and deficiency interest that had accrued for tax years 1970, 1973, and 1974. However, the IRS later determined in 1983 that in actuality there were no deficiencies for 1970 and 1973 and that the deficiency for 1974 had been overstated in 1979. Because these deficiencies were erroneous, plaintiffs contend that the 1979 payments of deficiency interest on these deficiencies should be classified as additional "overpayments" of taxes on which plaintiffs are entitled to receive interest under Section 6611(a).

To support their position, plaintiffs cite Example (2) in Section 301.6611–1 of the Treasury Regulations. Example (2) demonstrates that statutory interest accrues on an actual cash payment of deficiency interest if the deficiency interest was erroneously charged.[8] Plaintiffs argue that it would

assessed and is paid in equal amounts on November 15 and November 26, 1956. On April 15, 1957, it is determined that the correct tax liability of the taxpayer for 1954 is only $35,000.

| Tax liability | |
| --- | --- |
| Original assessment ......... | $50,000 |
| Deficiency assessment ....... | 10,000 |
| Total assessed .............. | 60,000 |
| Corrected liability .......... | 35,000 |
| Overassessment.............. | 25,000 |
| Record of payments | |
| March 15, 1955 ............. | $25,000 |
| June 15, 1955 .............. | 25,000 |

be inconsistent with the policy behind this regulation to require the IRS to pay such interest to a taxpayer only when the deficiency interest was paid through a cash payment and not when it was paid through an offset.

In its response, defendant agrees that some deficiency interest had accrued and was paid in 1979 on the deficiency originally found for tax year 1970, but disputes plaintiffs' calculation of the amount of deficiency interest paid. As to the 1973 and 1974 deficiencies, defendant contends that no deficiency interest was ever assessed and, therefore, none was paid. Defendant's arguments as to each of these tax years focus on the large overpayments found in 1979 for tax years 1971 and 1972. Defendant contends, in effect, that pursuant to Sections 6402(a) and 6601(g), the 1971 and 1972 overpayments were available for crediting against deficiencies as of the date the overpayments were made. As a result, no deficiency interest could be imposed for the period subsequent to the date of the overpayment in 1971. The 1971 overpayment was sufficiently large to satisfy the entire 1970 deficiency and thereby prevent any assessment of deficiency interest for the period subsequent to the 1971 overpayment. The remaining portion of the 1971 overpayment combined with the 1972 overpayment were sufficiently large to satisfy the subsequent 1973 and 1974 deficiencies and thereby prevent any assessment of deficiency interest on those deficiencies.

Thus, defendant does not dispute that plaintiffs paid deficiency interest on the purported 1970 deficiency for the time period up through the 1971 overpayment and that plaintiffs are entitled to statutory interest on such "overpayments."[9] The sole dispute presently before this court is the extent to which in 1979 plaintiffs paid any additional deficiency interest for the tax year 1970 or paid any deficiency interest at all for tax years 1973 or 1974.

### IV.

While plaintiffs' argument that they paid such deficiency interest has some equitable appeal, it cannot withstand close legal analysis.[10] The only exchange of money that occurred in 1979 was the payment by the IRS to plaintiffs of $2,363,344.71 in overassessments and $3,062,345.76 in statutory interest. The IRS did not demand any additional payments and plaintiffs did not make any additional payments. Plaintiffs create an additional 1979 "overpayment" of deficiency interest based on their interpretation of the internal calculations that led to the 1979 payment by the IRS. But defendant is correct in that the controlling statutes preclude such an interpretation.

Section 6601(g), which governs the calculation of interest where overpayments are credited against underpayments, provides that when a deficiency is satisfied by a credit, "no interest shall be imposed [on the deficiency] for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment." Clearly, if the 1971 and 1972 overpayments had not been cred-

November 15, 1956......... 5,000
November 26, 1956......... 5,000
Since the correct liability in this case is $35,000, the entire payment of $25,000 made on March 15, 1955, and $10,000 of the payment made on June 15, 1955, are applied in satisfaction of the tax liability. The balance of the payment made on June 15, 1955 ($15,000), plus the amounts paid on November 15 ($5,000), and November 26, 1956 ($5,000), constitute the amount of the overpayment. The dates of the overpayments from which interest would be computed are as follows:

| Date | Amount of overpayment |
| --- | --- |
| June 15, 1955 | $15,000 |
| November 15, 1956 | 5,000 |

November 26, 1956......... 5,000
<u>The amount of any interest paid with respect to the deficiency of $10,000 is also an overpayment.</u>

(Emphasis added.)

9. The correctness of the parties' conclusion that plaintiffs paid such deficiency interest for the time period up through the 1971 overpayment is not presently before the court.

10. As noted above, the issue presented herein is one of first impression. Though the IRS has consistently interpreted the offset procedures as it did herein, the parties have not cited any case in which a taxpayer contested the IRS's actions based on the theory presented herein.

ited against the 1970, 1973, and 1974 deficiencies, interest "would have been allowable" on the overpayments pursuant to Section 6611(a) for all periods after such overpayments were made. Hence, pursuant to Section 6601(g), the 1971 overpayment precluded the imposition of any further deficiency interest for tax year 1970, and the 1971 and 1972 overpayments precluded the imposition of deficiency interest on the 1973 and 1974 deficiencies.[11] Since deficiency interest was not imposed, the 1979 offset could not have involved the actual payment of the disputed deficiency interest, and Example (2) in Section 301.-6611–1 of the Treasury Regulations, which allows statutory interest on erroneously paid deficiency interest, does not apply.

In their response to defendant's cross-motion for summary judgment, plaintiffs dispute that Section 6601(g) applies as interpreted above. Plaintiffs contend that Section 6601(g) was intended to apply only to periods of time when there is actual mutual indebtedness (*i.e.*, only for time periods when the taxpayer owes money to the IRS and the IRS owes money to the taxpayer). Plaintiffs argue, in effect, that the IRS acknowledged in 1983 that the deficiencies it perceived in 1979 in relevant part did not exist and, hence, that there was no mutual indebtedness until the due date of the 1974 taxes—the first tax year where there was a true deficiency. Therefore, plaintiffs contend, the actual tax liability as determined in 1983 is the proper reference point for the determination as to whether mutuality of indebtedness existed and, hence, whether the "no interest" provision in Section 6601(g) applies.

But the crucial issue herein is whether and to what extent plaintiffs paid deficiency interest in 1979. At the time of the 1979 offset, the IRS believed that mutual liability existed as to the relevant time periods and the offset therefore was conducted pursuant to Section 6601(g), with no deficiency interest being imposed on the perceived deficiencies. It is not apparent how, by demonstrating that the factual basis for

the 1979 offset was erroneous, plaintiffs can create a 1979 payment of deficiency interest when the provisions employed by the IRS in conducting the offset precluded the imposition of any deficiency interest.

Moreover, using the actual tax liability as determined in 1983 as a reference point cannot help plaintiffs create an additional overpayment in 1979. Plaintiffs' creative argument notwithstanding, this action involves a two-step repayment by the IRS of tax overpayments and related statutory interest covering tax years 1970 through 1974. In 1979, the IRS calculated plaintiffs' tax liabilities for tax years 1970 through 1974 and refunded $2,363,344.71 in overpayments plus $3,062,345.76 in statutory interest. In 1983, the IRS allowed additional depreciation deductions that it had not allowed in 1979 and, hence, after recalculating plaintiffs' 1970 through 1974 tax liabilities, the IRS refunded an additional $23,645,718.66 in overpayments plus $24,156,641.43 in statutory interest thereon. Clearly, had the IRS allowed the 1983 deductions in 1979, it would have been obliged in 1979 to pay the resulting additional overpayments plus statutory interest thereon that had accrued up through 1979. The IRS did not make these additional payments in 1979 and, hence, this failure, in a sense, constitutes error.

But the proper characterization of that 1979 error is not that plaintiffs made any additional overpayments, but rather that the IRS delayed or withheld the refund of overpayments and related statutory interest that were properly due. The delaying or withholding of statutory interest by the IRS is a distinct act from the actual paying of deficiency interest by a taxpayer. Plaintiffs have not cited any statute, regulation, or case law that suggests that these two distinct acts are the same or should be treated the same so as to produce in this case an additional "overpayment" of deficiency interest on which interest would accrue under Section 6611(a). Example (2) in Section 301.6611–1 in the Treasury Regula-

---

11. Section 6611(b) serves as a corollary to Section 6601(g) by providing, in effect, that interest on the 1971 and 1972 overpayments used in the offsets ceased to accrue on "the due date of the amount against which the credit is taken."

tions certainly does not so provide. It involves actual payment of deficiency interest over and above previous overpayments of taxes and does not concern erroneous offsets or delays in refunding overpayments. Hence, viewing the facts from a 1983 perspective does not aid plaintiffs' cause.[12]

## V.

The equitable appeal to plaintiffs' argument is that this court's approach would assign economic significance to the distinction between the IRS withholding payment and a taxpayer making a payment when in each instance the IRS would be retaining the same amount of the taxpayer's money. In an ideal economic world, the two situations would be treated identically. But, as explained above, the controlling statutes require that this distinction be made. Moreover, an analysis of the economic harm that plaintiffs suffered strongly suggests that Congress intended to treat the two situations differently.

As explained above, had the IRS recognized the additional deductions in 1979, plaintiffs would have received at that time the resulting overpayments and accrued statutory interest thereon. Plaintiffs could have invested both the overpayments and the statutory interest and secured interest on both investments. The 1983 refund included interest for the period 1979 through 1983 on the overpayments but did not include any interest on the statutory interest that had accrued on the overpayments as of 1979. In relevant part, therefore, the economic harm to plaintiffs resulting from the 1979 to 1983 delay in payment was to deprive plaintiffs of interest during the period 1979 through 1983 on the statutory interest that had accrued prior to 1979.

Plaintiffs' interpretation of the pertinent statutes would address that harm. By characterizing the 1979 offset as involving a payment of deficiency interest by plaintiffs in an amount equal to the statutory interest that had accrued but was not refunded in 1979, plaintiffs, in effect, would gain interest for the period after 1979 on the amount of such statutory interest. But, contrary to plaintiffs' approach, depriving plaintiffs of interest on such accrued interest is consistent with the general statutory scheme adopted by Congress. As explained above, until it changed the law to mandate the payment of compound interest effective 1983, Congress had provided only for the payment of simple interest on overpayments. Simple interest differs from compound interest precisely in that simple interest does not involve the grant of interest on accrued interest. Thus, when simple interest is involved, any delay in repayment of tax overpayments inherently works to the economic benefit of the IRS and to the detriment of the taxpayer. The IRS benefits in that it gains the use of accrued interest owed to the taxpayer without having to pay any additional interest on that money. The taxpayer is harmed in that it does not receive interest on the accrued interest.[13]

Thus, the economic harm that plaintiffs seek to address herein, i.e., being deprived of interest on accrued interest by the IRS's delay in refunding overpayments, is simply characteristic of the economic effects that flow from Congress' decision to provide simple rather than compound interest prior to 1983. Nothing in the cited statutes and regulations relating to offsets suggests that Congress intended to treat delays in refunding overpayments that stem from

12. Plaintiffs' argument rests exclusively on the IRS's 1979 actions. Plaintiffs acknowledge that as of 1978, years after the 1970 through 1973 overpayments were made, the liability of the IRS was limited to the amount of overpayments for 1970 through 1974 together with statutory interest that had accrued on the overpayments. Plaintiffs contend, therefore, that the IRS's 1979 action, which involved allowing certain disputed deductions and paying a refund, triggered potential liability beyond the refund of overpayments plus accrued statutory interest. The effect of plaintiffs' proposal, therefore, is that a decision to recognize deductions and refund overpayments triggers liability that would not exist if the IRS instead denied the deductions.

13. The benefits flow the other way—to the taxpayer—when deficiencies are involved because prior to 1983, the taxpayer paid only simple interest on such deficiencies. *See* Sections 6601 and 6621 of the Code.

**394**

erroneous offsets any differently from delays caused by any other reason, *i.e.,* by authorizing compound interest in instances of erroneous offsets.

Congress chose to address the adverse economic effects of simple interest when it changed the law and mandated payment of compound interest commencing in 1983. This change addressed the economic disadvantage to a taxpayer stemming from a delay in an IRS refund, and applied equally to all causes of delay including erroneous offsets. Thus, as plaintiffs acknowledged at oral argument, the present cause of action would not arise for post–1982 tax periods because compound interest would grant plaintiffs the interest they seek herein. Congress could have made the 1983 change to compound interest retroactive but it chose not to do so. Therefore, for tax periods prior to 1983, plaintiffs, like all other taxpayers, are entitled only to simple interest on overpayments. Hence, plaintiffs must suffer the economic disadvantage that results herein from the IRS's delay in refunding plaintiffs' overpayments.

### Conclusion

For the reasons set forth above, the court concludes that with respect to tax years 1970 through 1974, plaintiffs have not paid any deficiency interest subsequent to the effective date of plaintiffs' overpayment in tax year 1971. The parties shall file a report on or before the date 30 days from the date of this opinion in which they either stipulate as to the refund due plaintiffs based on this opinion or set forth their respective claims as to the amount due.

IT IS SO ORDERED.