**FOUR STAR OIL & GAS COMPANY,**
**Formerly Getty Oil Company,**
**Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

No. 99–899 T.

United States Court of Federal Claims.

July 11, 2001.

---

Mary A. McNulty, Dallas, TX, for plaintiff. Emily A. Parker and David J. Dziak, of counsel.

Charles M. Ruchelman, with whom was Claire Fallon, Acting Assistant Attorney General, Tax Division, United States Department of Justice, Washington, DC, for defendant. Mildred L. Seidman, Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

This is a suit to recover interest assessed on plaintiff's payments of windfall profit excise taxes for the second quarter of 1980. Plaintiff contends that the interest was improperly assessed because there was no deficiency in plaintiff's payments of windfall profit excise taxes at the time in question. Defendant Internal Revenue Service (the Service) argues that the deficiency interest was properly assessed under then-current law. The suit comes before the court on the parties' cross-motions for summary judgment. For the following reasons, the court GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for summary judgment with respect to the assessment of deficiency interest during the period March 1, 1981 through December 31, 1982, and GRANTS plaintiff's motion for summary judgment with respect to the assessment of deficiency interest during the period September 29, 1987 through October 9, 1987.

### I. Background

The parties have filed Joint Stipulations (Jt.Stip.), accompanied by Joint Exhibits (Jt.Exh.). The Joint Stipulations are statements of fact regarding the events addressed by this case, and the Joint Exhibits document several of the filings and transactions between the parties. At the court's request the parties agreed to several additional stipulations regarding interest rates applicable to tax overpayment and underpayments in the periods at issue in this case. Supplemental Joint Stipulation (Supp.Jt.Stip.).[1]

The suit concerns plaintiff's windfall profit excise tax liability for the second quarter of

---

1. By order filed on May 18, 2001, the court requested that the parties either concur in certain proposed stipulations regarding applicable interest rates or state any objections. Order of May 18, 2001. On May 23, 2001, the parties filed a Supplemental Joint Stipulation agreeing to the court's proposed stipulations with several modifications.

1980, for which plaintiff filed a return on August 15, 1980. The final determination of plaintiff's tax liability was reached on November 24, 1993. In the intervening thirteen years, the Service made a number of adjustments to plaintiff's excise tax liability for the second quarter of 1980, seeking in each adjustment to eliminate an apparent deficiency or overpayment and reduce both plaintiff's and defendant's obligations to zero. Jt. Stip. ¶¶ 14, 19, 24, 30, 33.

These adjustments resulted in two periods (March 1, 1981 through December 31, 1982, and March 7, 1986 through September 28, 1987) when plaintiff's account was deficient. Jt. Exh. 28. The Service assessed deficiency interest with respect to those periods. *Id.* During the remainder of the thirteen-year period, plaintiff's account was overpaid and earned overpayment interest. *Id.* Plaintiff's complaint addresses the assessment of deficiency interest for the period from March 1, 1981 through December 31, 1982, and the effects of that assessment on overpayment and underpayment interest assessments thereafter. Complaint ¶¶ 12, 16. A detailed account of the adjustments is set forth in Appendix A to this opinion. This discussion summarizes the adjustments to the extent necessary for the disposition of this case.

Plaintiff, under its former name of Getty Oil Company, filed a windfall profit excise tax return for the second quarter of 1980 on August 15, 1980. Jt. Stip. ¶ 10; Jt. Exh. 4. The return was due on August 31, 1980. Jt. Stip. ¶ 9. The return showed an estimated tax liability of $74,330,123.[2] *Id.* ¶ 10. On June 23, 1986, the Service abated plaintiff's tax liability for the second quarter of 1980 in the amount of $16,479,872 and credited that amount to plaintiff's obligation for the fourth quarter of 1980, effective February 28, 1981. *Id.* ¶ 14. The Service determined that plaintiff was entitled to $1,436,906 as a refund, representing the interest earned by the overpayment of $16,479,872 from September 1, 1980 through February 28, 1981, and from January 1, 1983 through March 6, 1986. *Id.* ¶ 15; Jt. Exh. 28.[3] The $1,436,906 in interest was paid directly to plaintiff on March 6, 1986 or June 23, 1986.[4] Jt. Stip. ¶ 15.

On or about July 14, 1986, the Service abated plaintiff's tax liability for the second quarter of 1980 in the amount of $388,711 and credited that amount to plaintiff's obligation for the third quarter of 1980, effective November 30, 1980. Jt. Stip. ¶ 19. The Service determined that plaintiff was entitled to $17,659 as a refund, representing the interest earned by the overpayment of $388,711 from September 1, 1980 through November 30, 1980 and from January 1, 1983 through July 14, 1986. *Id.* ¶ 20; Jt. Exh. 28. The Service paid the $17,659 in interest directly to plaintiff. Jt. Stip. ¶ 20.

---

2. All figures have been rounded to the nearest dollar.

3. Plaintiff's overpayment did not earn overpayment interest from March 1, 1981 through December 31, 1982, because the law in effect until January 1, 1983 provided for simple interest, rather than compound interest, on tax overpayments and deficiencies. *See* Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, § 344(c), 96 Stat. 324, 636 (1982) ("The amendments made by this section [requiring the compounding of interest] shall apply to interest accruing after December 31, 1982.") No interest accrued on simple interest so earned. *See Texas Eastern Corp. v. United States,* 18 Cl.Ct. 387, 393 (1989) ("[U]ntil it changed the law to mandate the payment of compound interest [on overpayments and deficiencies] effective 1983, Congress had provided only for the payment of simple interest .... Simple interest differs from compound interest precisely in that simple interest does not involve the grant of interest on accrued interest."). Plaintiff's principal overpayment of

$16,081,476 was eliminated by the transfer of $16,479,872 from plaintiff's second quarter account to plaintiff's fourth quarter account, effective February 28, 1981. Jt. Exh. 28. That transfer did not eliminate the overpayment interest balance of $968,587 earned by the overpayment from September 1, 1980 through February 28, 1981, however. *Id.* When compound interest went into effect on January 1, 1983, the accrued overpayment interest balance of $968,587 began earning interest. *Id.*

4. The parties' Joint Stipulations state that the Service abated plaintiff's tax liability by $16,479,872 on June 23, 1986, but that $1,436,906 in overpayment interest was allowed and paid "on either March 6, 1986, or June 23, 1986." Jt. Stip. ¶¶ 14–15. The Joint Stipulations also state that the overpayment interest paid to plaintiff represented interest earned on plaintiff's overpayment through March 6, 1986. Jt. Stip. ¶ 15. The resolution of the discrepancy regarding the date of the interest payment is not material to the court's disposition of this case.

On or about September 28, 1987, the Service assessed additional windfall profit excise tax on plaintiff for the second quarter of 1980 in the amount of $580,552. Jt. Stip. ¶ 24. The Service also assessed interest of $748,152, representing interest accrued from September 1, 1980 through September 28, 1987. *Id.* On October 9, 1987, plaintiff made a payment of $1,328,704 for the deficiency of $580,552 and the accrued deficiency interest of $748,152.[5] *Id.* The deficiency assessment, coupled with the abatements of tax liability made in 1986, meant that plaintiff had both an accrued overpayment interest balance (not earning interest) and a principal deficiency (earning interest) from March 1, 1981 through December 31, 1982. As calculated on September 28, 1987, the non-interest-bearing overpayment interest balance effective February 28, 1981 was $957,747,[6] and the principal deficiency was $580,552. Jt. Stip. ¶ 24.

The Service assessed additional excise tax on plaintiff for the second quarter of 1980 in the amount of $73,851 on or about April 26, 1993. Jt. Stip. ¶ 30. On or about November 29, 1993, the Service abated plaintiff's excise tax liability for the second quarter of 1980 by $256,007. *Id.* ¶ 33. The net decrease in plaintiff's assessed tax liability was $182,156. *Id.* ¶ 32. The Service made a refund of $706,317 to plaintiff on November 5, 1993. *Id.* The refund represented the sum of the net decrease in liability of $182,156, an additional $17,423 in overpayment interest,[7] and an abatement by $506,738 of previously assessed deficiency interest.[8] *Id.* ¶¶ 32–33. As a result of the November 1993 net abatement of plaintiff's liability, the non-interest-bearing overpayment interest balance effective February 28, 1981 was $968,587, and the principal deficiency was $398,396. Jt. Exh. 28.

As a result of these adjustments, plaintiff's second quarter account was deficient, and accrued deficiency interest, from March 1, 1981 through December 31, 1982, and from March 7, 1986 through September 28, 1987. Jt. Exh. 28. For the remainder of the period September 1, 1980 through November 5, 1993, plaintiff's second quarter account was overpaid and earned overpayment interest. *Id.* Plaintiff filed a claim with the Service on August 30, 1999, seeking a refund of the deficiency interest assessed for the period March 1, 1981 through December 31, 1982. Jt. Exh. 3. Because the assessment of deficiency interest for that period affected the

5. The initial assessment of $748,152 in deficiency interest represented interest accrued through September 28, 1987. Jt. Stip. ¶ 24. In a later adjustment of plaintiff's tax liability, the Service assessed additional deficiency interest of $2,702 for the period September 29, 1987 through October 9, 1987, the date of plaintiff's $1,328,704.46 payment. Second Supplemental Joint Stipulation (Second Supp. Jt. Stip.) at 2. Section 6601(e) of title 26 of the United States Code provides that when a taxpayer makes a payment within 10 business days of the date of the Service's notice and demand for payment (in the case of a payment of $100,000 or more), no interest shall be imposed for the period from the date of notice and demand to the date of payment. The parties agree that the Service erred in assessing deficiency interest for the period September 29, 1987 through October 9, 1987. Plaintiff's Motion for Summary Judgment and Brief in Support Thereof (Pl.Mot.) at 12; Cross-Motion of the United States for Summary Judgment and Brief for the United States in Support Thereof and in Opposition to Plaintiff's Motion for Summary Judgment (Def.Mot.) at 15 n. 11.

6. The parties have stipulated that deficiency interest was assessed at a 12% rate from September 1, 1980 through February 28, 1981. Supp. Jt. Stip. at 2. The deficiency of $580,552 there-

fore accrued simple interest in the amount of $34,547 during that period. The Service had calculated, in the two 1986 adjustments, that plaintiff earned $992,294 in overpayment interest from September 1, 1980 through February 28, 1981. Jt. Stip. ¶¶ 15, 20. The 1987 deficiency assessment therefore reduced the overpayment interest earned to $957,747.

7. The Service determined that plaintiff's account for the second quarter of 1980 had earned a total of $1,471,988 in overpayment interest, of which $1,454,565 had already been paid ($1,436,906 on March 6, 1986, and $17,659 on July 14, 1986). Jt. Stip. ¶¶ 15, 20, 36. Accordingly, the Service paid plaintiff $17,423, representing the difference between the $1,471,988 owed to plaintiff and the $1,454,565 already paid to plaintiff. *Id.* ¶ 36.

8. The Service determined that a total of $241,414 in deficiency interest had accrued on plaintiff's account for the second quarter of 1980, and that $748,152 in deficiency interest had previously been assessed. Jt. Stip. ¶ 35. Accordingly, the Service paid plaintiff $506,738, representing the difference between the $241,414 owed by plaintiff and the $748,152 already paid by plaintiff. *Id.*

amount of overpayment interest and deficiency interest accrued from January 1, 1983 through November 5, 1993, plaintiff also sought additional overpayment interest and a reduction of deficiency interest to address those effects.

Plaintiff filed suit in this court on October 27, 1999, arguing that it was improper for the Service to assess deficiency interest during the period March 1, 1981 through December 31, 1982, because the Service should have offset plaintiff's accrued overpayment interest balance of $968,587 against plaintiff's principal deficiency of $398,396. Complaint ¶¶ 12, 14. Defendant argues on the merits that its assessment of deficiency interest on plaintiff's $398,396 deficiency was proper while also contending that plaintiff's suit is barred by the applicable statutes of limitations. Cross–Motion of the United States for Summary Judgment and Brief for the United States in Support Thereof and in Opposition to Plaintiff's Motion for Summary Judgment (Def.Mot.) at 11–25. The parties have filed and briefed cross-motions for summary judgment on all the issues presented for disposition in this case.

II. Discussion

A. Summary Judgment

Summary judgment is appropriate when "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Rule of the Court of Federal Claims (RCFC) 56(c); *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1131 (Fed.Cir.1998). A fact that may affect the outcome of the suit is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must construe all facts in the light most favorable to the nonmovant. *Id.* at 255, 106 S.Ct. 2505. The movant bears the initial burden of showing that there is no genuine issue of material fact; if the movant carries that burden, the burden shifts to the nonmovant to show, for each issue on which it will bear the burden of proof at trial, that there is a "genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the case is before the court on cross-motions for summary judgment, each motion is evaluated under the same standard. *Cubic Defense Sys., Inc. v. United States*, 45 Fed.Cl. 450, 457 (1999). The focus of plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment is the interpretation of provisions of the Internal Revenue Code, including the relationship among several different provisions. *See* Pl. Mot. at 6–14; Def. Mot. at 17–25. Questions of statutory interpretation are appropriately resolved on summary judgment. *See Hill v. United States*, 945 F.2d 1529, 1530 (Fed.Cir. 1991); *Abbott v. United States*, 41 Fed.Cl. 553, 560 (1998) (citing *Nissho Iwai Am. Corp. v. United States*, 143 F.3d 1470, 1472–73 (Fed.Cir.1998)).

B. Statute of Limitations

1. Possible Limitations Periods for Plaintiff's Claims

There are several limitations periods that may apply to plaintiff's suit. The choice of applicable periods depends in turn on the characterization of the interest refund sought as either deficiency interest or overpayment interest. The court now reviews the possible limitations periods.

█ Deficiency interest is governed by section 6601 of title 26 of the United States Code, which provides that "[i]f any amount of tax imposed by this title ... is not paid on or before the last date prescribed for payment, interest on such amount ... shall be paid for the period from such last date to the date paid." 26 U.S.C. § 6601(a) (2001). When deficiency interest is improperly assessed, the taxpayer may sue to recover such interest. *Alexander Proudfoot Co. v. United States*, 197 Ct.Cl. 219, 454 F.2d 1379, 1381 (1972). A suit to recover deficiency interest improperly assessed under § 6601 must comply with the requirements of 26 U.S.C. § 7422. *Edinburg v. United States*, 223 Ct. Cl. 1, 617 F.2d 206, 210–11 (1980); *Alexander Proudfoot*, 454 F.2d at 1381–83. Section 7422 states that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax ... until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of

law in that regard." 26 U.S.C. § 7422(a) (2001). The requirement in § 7422 that a claim for refund "duly filed ... according to the provisions of law in that regard" precede the filing of a suit incorporates the limitations provisions of 26 U.S.C. § 6511. *Alexander Proudfoot,* 454 F.2d at 1381–82 & n. 6. Section 6511(c) provides that "if an agreement ... extending the period for assessment of a tax imposed by this title is made[,] ... [t]he period for filing claim for credit or refund ... shall not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement or any extension thereof." 26 U.S.C. § 6511(c)(1) (2001).

Claims for refund of unpaid overpayment interest are governed by section 6611 of title 26 of the United States Code, which provides that "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax." 26 U.S.C. § 6611(a) (2001). Section 2501 of title 28 of the United States Code states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2001); *see also* 28 U.S.C. § 2401 (2001) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."). The Tucker Act confers on this court jurisdiction over "any claim against the United States founded ... upon ... any Act of Congress." 28 U.S.C. § 1491(a)(1) (2001). Claims for unpaid overpayment interest under § 6611(a) are governed by the six-year limitations period of §§ 2401 and 2501, rather than the limitations period set out in 26 U.S.C. § 6511. *Alexander Proudfoot,* 454 F.2d at 1384.

The parties dispute whether plaintiff's suit is for improperly assessed deficiency interest or for unpaid overpayment interest. The court will first examine whether plaintiff's suit is for improperly assessed deficiency interest or for unpaid overpayment interest, and will then consider the application of the appropriate statutes of limitation.

2. Characterization of Plaintiff's Claim

■ Plaintiff argues that its claim is for unpaid overpayment interest and that its claim accrued in November 1993, when the Service made a refund to plaintiff on which the interest was improperly computed. Plaintiff's Brief in Opposition to Defendant's Cross–Motion for Summary Judgment and in Reply to Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment (Pl.Opp.) at 14–15. Defendant argues that plaintiff's suit in fact challenges the amount of deficiency interest that the Service abated in 1993. Reply Brief of the United States in Support of its Cross–Motion for Summary Judgment (Def.Reply) at 9.

The gravamen of plaintiff's complaint is that the deficiency interest for March 1, 1981 through December 31, 1982 should not have been assessed. Jt. Stip. ¶ 37; Pl. Mot. at 7. Plaintiff does not argue that overpayment interest should have been credited to its account during that period, since the law then permitted only simple interest on plaintiff's overpayment and did not permit plaintiff to earn interest on the overpayment interest that had already accrued. With regard to the period March 7, 1986 through September 28, 1987, plaintiff acknowledges that its account with the Service was underpaid, but contends that the amount of the underpayment was increased by the deficiency interest assessed from March 1, 1981 through December 31, 1982. *Compare* Jt. Exh. 28 (Service computation, showing a deficiency interest assessment in the amount of $124,362 for the period March 7, 1986 through October 9, 1987) [9] *with* Jt. Exh. 30 (plaintiff's computa-

---

9. Defendant has acknowledged that the extension to October 9, 1987 of the period in which deficiency interest was assessed was erroneous. *See supra* n. 5. The court invited briefing on the distinction, for purposes of the statute of limitations, between the deficiency interest of $2,702 and the balance sought by plaintiff. *See* Order filed June 19, 2001; [Defendant's] Supplemental Memorandum in Response to June 19, 2001 Order, filed June 28, 2001 (Def.Supp.Response); Plaintiff's Response to Defendant's Supplemental Memorandum in Response to June 19, 2001 Order, filed July 9, 2001 (Pl.Supp.Reply). Defendant stated in its brief that it believed plaintiff's claim for the $2,702 to be timely. Def. Supp. Response at 3. Plaintiff contended in its brief that defendant's concession applies with equal force to the balance of plaintiff's case. Pl. Supp.

tion, showing its view that the proper deficiency interest assessment was $95,093 for the same period). Plaintiff's claim with respect to these periods therefore appears to the court to be for improperly assessed deficiency interest.

Plaintiff argues that the entirety of its suit should be regarded as a suit for overpayment interest because the error in question arose in the computation of interest accompanying an overpayment in November 1993. Pl. Opp. at 14–15. Defendant points out that, if plaintiff challenges the amount of deficiency interest that was abated in 1993, the action cannot be characterized in its entirety as a suit for overpayment interest. Def. Reply at 9. The court agrees with defendant. The 1993 computation addressed both deficiency interest and overpayment interest. The computation reduced the amount of deficiency interest owed by plaintiff (in light of a previous assessment of deficiency interest) and increased the amount of overpayment interest owed to plaintiff (in light of a previous refund of overpayment interest). Jt. Stip. ¶¶ 35–36. The court believes it to be immaterial that the alleged error arose when the Service was computing interest on an overpayment, because the computation affected both types of interest.

■■■ Defendant argues that the action must be considered solely as a suit for deficiency interest because plaintiff challenges the assessment of deficiency interest during the period March 1, 1981 through December 1982, and interest accruing on that deficiency interest thereafter. Def. Reply at 9. The court disagrees. Overpayment interest is earned when the Service has the use of a taxpayer's money. *See Alexander Proudfoot*, 454 F.2d at 1384. Plaintiff alleges that the Service had the use of plaintiff's money

for the periods January 1, 1983 through March 6, 1986 and October 10, 1987 through the date when a judgment is entered. Jt. Exh. 30. That the overpayment interest sought represents an increase from the overpayment interest already paid does not convert the interest sought into improperly assessed deficiency interest. For purposes of the limitations question, then, plaintiff's suit is a suit for overpayment interest with respect to the period January 1, 1983 through March 6, 1986 and October 10, 1987 through the date of a judgment for plaintiff.

### 3. Limitations Period on Plaintiff's Deficiency Interest Claim

■■■ The court now considers whether plaintiff's suit is timely to the extent that it requests a refund of improperly assessed deficiency interest for the periods March 1, 1981 through December 31, 1982, and March 7, 1986 through September 28, 1987. No suit for deficiency interest may be maintained in this court unless a timely claim for refund is first filed with the Service. 26 U.S.C. § 7422(a) (2001).

Defendant argues that plaintiff's suit for improperly assessed deficiency interest is barred by the applicable statute of limitations. Def. Mot. at 11–16. Defendant argues that, under 26 U.S.C. § 6511(c), plaintiff was required to file its claim for refund within six months of the expiration of the extended assessment period, and that plaintiff is barred from suit by its failure to file its claim until 1999.[10] *Id.* at 10. Plaintiff contends that the claim it filed on November 11, 1992, in which it sought an abatement with interest of its excise tax liability for the second quarter of 1980 on the grounds that the net income limitation had not been prop-

---

Reply at 2. Because the error was not committed until November of 1993 (within the court's six-year statute of limitations), the court is not persuaded that defendant's concession of the $2,702 requires that defendant also concede the limitations question for the balance of plaintiff's case. Def. Supp. Response at 4; Pl. Supp. Reply at 5.

**10.** Joint Exhibit 32, which contains a chronology of payments and extensions on plaintiff's account for the second quarter of 1980, appears to indicate that the period for assessment of tax was

extended through November 29, 1993. Jt. Exh. 32. Joint Exhibit 5 contains an agreement between the parties to extend the assessment period through April 30, 1993. Defendant states that the chronology in Joint Exhibit 32 is incorrect and that the agreement in Joint Exhibit 5 represents the parties' agreement. Transcript of May 24, 2001 Oral Argument (Tr.) at 9–11. Because the point in question is not dispositive of any issue in this case, the discrepancy need not be resolved.

erly computed, *see* Jt. Exh. 22, was a duly filed claim under § 7422 that encompassed the present dispute. Pl. Opp. at 9–10. Because the interest claim in the November 11, 1992 claim was never formally disallowed, plaintiff argues, the applicable limitations period never began to run, and plaintiff's October 27, 1999 suit was timely. *Id.* at 11–12.

It is undisputed that, if plaintiff's claim was filed on November 11, 1992, it was within the extended period for assessment and was a timely claim for purposes of § 7422(a). Defendant contends, however, that plaintiff's November 11, 1992 refund claim is unrelated to this suit. Def. Reply at 20–22. The court now examines that contention.

The November 11, 1992 claim was for an adjustment of plaintiff's principal tax liability, with interest on the adjustment. Jt. Exh. 22. Specifically, the claim requested a refund for plaintiff's "abandoned geological and geophysical costs allocated ... to its mineral properties for purposes of computing the net income limitation on its properties" with respect to, *inter alia,* the second quarter of 1980. *Id.* The court notes that plaintiff did not raise in its November 11, 1992 claim any allegation of impropriety in the assessment of deficiency interest from March 1, 1981 through December 31, 1982. *See id.* Consistent with the absence of any mention of interest in plaintiff's November 11, 1992 claim, the Service's partial allowance and partial disallowance of that claim addressed plaintiff's claim for an adjustment of its principal tax liability and did not acknowledge or address any dispute regarding the assessment of deficiency interest. Jt. Exh. 23.

Plaintiff cites *Deluxe Check Printers, Inc. v. United States,* 15 Cl.Ct. 175 (1988), *rev'd in part on other grounds sub nom. Deluxe Corp. v. United States,* 885 F.2d 848 (Fed. Cir.1989), for the proposition that "a refund claim based on an erroneous tax assessment automatically includes a claim for the erroneous assessment of interest on that tax." Pl. Opp. at 9. In *Deluxe Check,* the taxpayer filed a claim for the refund of self-assessed tax on which it had paid deficiency interest, but did not explicitly request the refund of the deficiency interest. 15 Cl.Ct. at 179. The court found that the self-assessed tax

was in fact not a tax but a penalty on which no deficiency interest accrued, and held that the Service "must have considered and evaluated the applicability" of the relevant code section (barring deficiency interest on a penalty) when it assessed deficiency interest. *Id.* at 181. The court held that the taxpayer had effectively filed an "informal claim" for a refund of erroneously assessed interest when it filed a formal claim for the refund of the principal on which the interest accrued. *Id.* at 180–81. The court noted that the "informal claim" requirement is satisfied when the Service has "adequate notice of the nature of the claims as well as the factual basis so that [it] may begin an investigation or correct errors." *Id.* at 180.

Defendant argues that nothing in the claim filed on November 11, 1992 raised the issue of the claimed impropriety of the Service's computation of interest for the period March 1, 1981 through December 31, 1982. Def. Reply at 25–26. The court agrees. The court can discern no reason why the Service would have been on any kind of notice, let alone "adequate notice," *see Deluxe Check,* 15 Cl.Ct. at 180, to investigate that issue in the course of its ruling on plaintiff's claim for an abatement of the principal tax. *Deluxe Check* appears merely to indicate that plaintiff would have been entitled to interest on the abatement allowed on January 15, 1993, *see* Jt. Exh. 23, even if it had failed to request that interest in its claim. *See also John B. Lambert & Assocs. v. United States,* 212 Ct.Cl. 71, 87 (Ct.Cl.1976) (when taxpayer contested principal tax liability, claim included only the interest "tied entirely to the lawfulness of the principal tax" and not unrelated disputes about the computation of interest).

Plaintiff also cites the Federal Circuit's *Deluxe Check* decision on appeal, arguing that the Federal Circuit "determined that there was a tax refund allowed, and so it automatically refunded interest." Tr. at 43–44. The Federal Circuit did, in fact, find that a tax had been incorrectly assessed and ordered that the tax and the interest paid on that tax be refunded. *Deluxe Corp.,* 885 F.2d at 853. The taxpayer's entitlement to interest did not depend on the merits of a

separate claim, however; the interest refunded was merely the interest that had been erroneously assessed and paid, plus the interest accrued on that overpayment. *Id.* Here, plaintiff's claim for interest is based on grounds unrelated to its 1992 claim for "abandoned geological and geophysical costs allocated . . . to its mineral properties." Jt. Exh. 22. The partial allowance of the 1992 claim did not "automatically" entitle plaintiff to a refund of the deficiency interest assessed for the period March 1, 1981 through December 31, 1982.

As defendant argues, a timely claim for refund based on a specific claim cannot make an otherwise untimely suit based on an unrelated claim timely. Def. Reply at 20–21; *see Lockheed Martin Corp. v. United States,* 210 F.3d 1366, 1371 (Fed.Cir.2000) (" '[A]ny legal theory not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated.' ") (quoting *Burlington N., Inc. v. United States,* 231 Ct.Cl. 222, 684 F.2d 866, 868 (1982)); *Union Pac. R. Co. v. United States,* 182 Ct.Cl. 103, 389 F.2d 437, 442 (1968) ("[A] ground for refund neither specifically raised by, nor comprised within the general language of, a timely formal or informal application for refund to the Internal Revenue Service cannot be considered by a court in which a suit for refund is subsequently initiated."); *First Nat'l Bank of Montgomery v. United States,* 150 Ct.Cl. 798, 280 F.2d 818, 821 (1960) (finding that court has no jurisdiction when plaintiff requested additional deductions after expiration of limitations period, on grounds that "this was not an amendment clarifying the original claim, but a new and different claim filed too late"). Plaintiff did not raise its claim for improperly assessed deficiency interest in its filing on November 11, 1992.

Plaintiff filed a claim for a refund of improperly assessed deficiency interest on August 30, 1999. Jt. Stip. ¶ 8. Section 6511(c) provides that when an extension is made a refund claim may be timely filed within six months after the expiration of the extended period for assessment. 26 U.S.C. § 6511(c). Plaintiff and defendant agreed, pursuant to 26 U.S.C. § 6501(c)(4), to extend the period for assessment of excise tax for the second quarter of 1980 through April 30, 1993. Jt. Exh. 5. Defendant contends that the August 30, 1999 claim was filed after the expiration of the six-month limitations period set out in § 6511(c) and was therefore untimely. Def. Mot. at 10. The court agrees. The six-month limitations period of § 6511(c) required plaintiff to file its claim on or before October 30, 1993.

Because neither the November 11, 1992 filing nor the August 30, 1999 filing was a timely claim for purposes of 26 U.S.C. § 7422(a), plaintiff's claim for a refund of improperly assessed deficiency interest is barred.

### 4. Limitations Period on Plaintiff's Overpayment Interest Claim

■ Plaintiff claims unpaid overpayment interest in the amount of $350,770 for the periods January 1, 1983 through March 6, 1986, and October 10, 1987 through October 27, 1999. Pl. Opp. at 15; Jt. Exh. 28. A claim for overpayment interest is timely if filed within six years of the accrual of the claims. *Alexander Proudfoot,* 454 F.2d at 1384.

■ Whether plaintiff's claim is timely depends on when its claim accrued. For purposes of the limitations period, a "claim first accrues when all the events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action." *Japanese War Notes Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 373 F.2d 356, 358 (1967). Plaintiff's claim arises from the simultaneous existence of an accrued overpayment interest balance and a principal deficiency as of March 1, 1981. Two overpayments were allowed and paid in 1986, effective on November 30, 1980 and February 28, 1981. Jt. Stip. ¶¶ 14, 19. Those overpayments gave rise to an accrued overpayment interest balance as of March 1, 1981. Jt. Exh. 28. On September 28, 1987, the Service assessed a deficiency in plaintiff's excise tax account for the second quarter of 1980, effective September 1, 1980 and continuing through September 28, 1987, and as-

sessed deficiency interest for the same period.[11]   Jt. Stip. ¶ 24.

The court must now determine whether plaintiff's cause of action accrued on September 28, 1987 or at a later time. Defendant argues that the Service's computation of deficiency interest on September 28, 1987 used the same methodology as the computation of deficiency interest on November 24, 1993. Def. Reply at 9–11. Plaintiff contends that the method of computation of deficiency interest in 1987 was different from the method of computation of deficiency and overpayment interest in 1993, and that only the 1993 approach gave rise to plaintiff's cause of action. Tr. at 45–47. Plaintiff also argues, more generally, that its suit questions the November 24, 1993 computation of deficiency interest, not the September 28, 1987 assessment. Pl. Opp. at 13–15. The court addresses the methodological question first.

On September 28, 1987, the Service, after assessing additional tax of $580,552, assessed $748,152 in deficiency interest for the period September 1, 1980 through September 28, 1987. Jt. Stip. ¶ 24. Plaintiff argues that the Service, rather than simply assessing $748,152 in deficiency interest, should have reduced a portion of the $1,454,565 in overpayment interest that had already been paid. Tr. at 45–46; Jt. Stip. ¶¶ 15, 20. The periods for which the $1,454,565 in overpayment interest was assessed were September 1, 1980 through February 28, 1981, and January 1, 1983 through July 14, 1986. *Id.* ¶¶ 15, 20. Because overpayment interest had already been refunded for much of the period for which deficiency interest was assessed in 1987, plaintiff suggests that the deficiency interest assessment could also have been characterized in part as a reduction of overpayment interest. Tr. at 45.

On November 5, 1993, however, the Service abated plaintiff's tax liability by $182,156. Jt. Stip. ¶ 32. Rather than simply characterizing the $182,156 as an overpayment and refunding to plaintiff the amount of overpayment interest earned by that overpayment from September 1, 1980 through November 5, 1993, the Service refunded $17,423 in unpaid overpayment interest and $506,738 in improperly assessed deficiency interest. *Id.* The $17,423 in unpaid overpayment interest reflected the Service's determination that the total overpayment interest earned for plaintiff's second quarter account—i.e., the interest earned for all periods during which plaintiff had a net overpayment balance—was $1,471,988, which was $17,423 more than the $1,454,565 already paid to plaintiff in 1986. *Id.* ¶¶ 15, 20, 36. The $506,738 in improperly assessed deficiency interest reflected the Service's determination that the total deficiency interest accrued for plaintiff's second quarter account—i.e., the interest accrued for all periods during which plaintiff had a net underpayment balance—was $241,414, which was $506,738 less than the $748,152 already paid by plaintiff in 1987. *Id.* ¶¶ 24, 35.

In the view of the court, the computation of the 1993 refund corrected an oversimplification in the 1987 assessment. Specifically, the 1987 assessment characterized all of the interest due as deficiency interest, even though some of the assessment could more accurately have been characterized as a reduction of excessive overpayment interest. (The 1993 correction did not change the amount at issue. *Compare* Jt. Exh. 25 (finding that the total amount owed to plaintiff, as the Service actually calculated it, was $706,317) *with* Jt. Exh. 28 (finding that the correct amount due to plaintiff, after recomputation of the module, was $706,317).) For purposes of the present claim, however, the correction is irrelevant. As defendant points out, *see* Tr. at 61, the computations of the 1987 assessment and the 1993 refund both

11. Defendant argues in the alternative that a claim for overpayment interest accrues when the Service allows the overpayment. Def. Mot. at 12–13; *see also Barnes v. United States,* 133 Ct.Cl. 546, 137 F.Supp. 716, 718 (1956) ("[A] cause of action for interest does not accrue until the refund or credit is allowed."); *Gen. Instrument Corp. v. United States,* 33 Fed. Cl. 4, 8 (1995) ("The binding precedent of the Court of Claims holds that a claim for statutory interest accrues when a refund is allowed."). Here, the Service allowed overpayments on either March 6, 1986 or June 23, 1986, and on July 14, 1986. Jt. Stip. ¶¶ 14–15, 19; *see supra* n. 4. Because no deficiency had yet been assessed, however, plaintiff's claim could not have accrued at any of those times.

indicate that plaintiff had a deficiency for the period March 1, 1981 through December 31, 1982. The action of the Service that is at the core of plaintiff's complaint is the assessment of deficiency interest for that period, notwithstanding the simultaneous existence of an overpayment interest balance. That assessment first occurred in 1987.

Plaintiff contends that legal error only arose when the Service "took into account the net balance throughout the tax period," which, plaintiff argues, first occurred in 1993. Tr. at 46–47. But the Service's failure to take into account the net balance—that is, construing accrued overpayment interest as part of the net balance—in 1987 must be viewed as equally "incorrect," from plaintiff's perspective, as the repetition of that failure in 1993. Plaintiff has not contended that it was correct in 1987, but incorrect in 1993, for the Service to ignore the accrued overpayment interest balance when computing deficiency interest for the period March 1, 1981 through December 31, 1982. The applicable law did not change. The court concludes that the alleged error first occurred in 1987.

Plaintiff's more general argument is that its suit challenges the amount of underpayment interest that was abated in 1993, rather than the amount of underpayment interest that was assessed in 1987. Pl. Opp. at 14. The chief difficulty with plaintiff's position is that the interest computation performed by the Service in 1993 largely tracked the computation performed in 1987. While the 1993 computation reduced the amount of deficiency interest accrued from March 1, 1981 through December 31, 1982 by $53,519,[12] the nature of the computation was the same. The Service, as plaintiff argues, see Pl. Opp. at 15, did not abate the deficiency interest accrued from March 1, 1981 through December 31, 1982 when calculating the 1993 refund. That failure to abate merely repeated the original action complained of—the assessment of deficiency interest for that period, despite the existence of an accrued overpayment interest balance. All the events

necessary to "fix the alleged liability of the United States and entitle the claimant to institute an action," see *Japanese War Notes*, 373 F.2d at 358, occurred in 1987. *See Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377–78 (Fed.Cir.1998) (holding that claim accrued on passage of earlier statute rather than later statute when later statute was "a continuation of the same restrictions set forth" in the earlier statute); *Alaska v. United States*, 32 Fed.Cl. 689, 701 (1995) (finding that claim challenging restrictions on oil exports accrued when the restrictions were enacted and that extensions and reauthorizations of restrictions did not cause new claims to accrue).

Because plaintiff's claim for unpaid overpayment interest was not filed in this court within the six-year limitations period set out in section 2501 of title 28, the claim is untimely.

## III. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Cross–Motion for Summary Judgment is GRANTED with respect to the assessment of a deficiency of $398,396 effective February 28, 1981 and the accrual of interest on that deficiency from March 1, 1981 through December 31, 1982. Plaintiff's Motion for Summary Judgment is GRANTED with respect to the accrual of interest in the amount of $2,702 on plaintiff's deficiency balance from September 29, 1987 through October 9, 1987.

Section 2411 of title 28 of the United States Code states that "[i]n any judgment of any court rendered ... for any overpayment in respect of any internal-revenue tax, interest shall be allowed ... from the date of the payment or collection thereof to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner of Internal Revenue." 28 U.S.C. § 2411 (2001). The refund to be paid to plaintiff shall include overpay-

---

12. This figure represents $170,571, the interest accrued on a simple interest basis on a deficiency of $580,552 from March 1, 1981 through January 31, 1982 at a rate of 12% and from February 1, 1982 through December 31, 1982 at

a rate of 20%, minus $117,052, the interest accrued on a deficiency of $398,396 during the same period at the same rates. Jt. Exh. 28. The parties have stipulated that these rates applied. Supp. Jt. Stip. at 2.

ment interest accrued on the $2,702 overpayment from October 9, 1987 through a date not to exceed thirty days before the payment of the judgment.

The Clerk of the Court is directed to enter judgment for plaintiff in the amount of $2,702, plus interest.

IT IS SO ORDERED.

## APPENDIX A

The following summarizes the assessment of and the various adjustments to plaintiff's windfall profit excise tax liability for the second quarter of 1980, as computed by the Service on November 24, 1993. The numbering of footnotes continues the numbering in the preceding opinion.

Plaintiff filed a windfall profit excise tax return for the second quarter of 1980 on August 15, 1980. Jt. Stip. ¶ 10; Jt. Exh. 4. The return was due on August 31, 1980. Jt. Stip. ¶ 9.[13] The return showed a tax liability of $74,330,123, total deposits of $71,266,799, and undeposited taxes in the amount of $3,063,324.[14] Id. Plaintiff paid the $3,063,324 due with its return. Id. Plaintiff's tax liability was later adjusted to $57,859,936. Id. ¶¶ 10, 14, 19, 24, 30, 33. Plaintiff therefore had an excise tax overpayment of $16,470,187 for the second quarter of 1980, effective August 31, 1980. Jt. Exh. 28.

Plaintiff's overpayment for the second quarter of 1980 earned $492,752 in simple interest at a rate of 12% from September 1, 1980 through November 30, 1980. Jt. Exh. 28; Supp. Jt. Stip. at 2. Effective November 30, 1980, plaintiff credited $388,711 of its

13. An overpayment is made before the tax is due does not begin earning overpayment interest under § 6611 until the due date of the tax. *See* 26 U.S.C. § 6611(d) (2001) ("Advance payment of tax, payment of estimated tax, and credit for income tax withholding.—The provisions of section 6513 ... shall be applicable in determining the date of payment."); 26 U.S.C. § 6513(a) (2001) ("[P]ayment of any portion of the tax made before the last day prescribed for the payment of the tax shall be considered made on such last day."). Plaintiff's overpayment therefore began earning interest on September 1, 1980.

14. Plaintiff's excise tax return for the second quarter of 1980 listed under "Retail and Use Taxes" a payment of $3,055. Jt. Exh. 4. The

## APPENDIX A—Continued

second quarter overpayment to its excise tax payment for the third quarter of 1980.[15] Jt. Stip. ¶ 19. Plaintiff's overpayment for the second quarter of 1980 was thereby reduced to $16,081,476. Jt. Exh. 28.

Plaintiff's remaining $16,081,476 overpayment for the second quarter of 1980 earned simple interest at a rate of 12% from December 1, 1980 through February 28, 1981. Supp. Jt. Stip. at 2. The amount of overpayment interest earned in that period was $475,835. Jt. Exh. 28. The total overpayment interest earned from September 1, 1980 through February 28, 1981 was therefore $968,587. Id. Effective February 28, 1981, plaintiff credited $16,479,872 of its overpayment to its excise tax payment for the fourth quarter of 1980.[16] Jt. Stip. ¶ 15.

The transfer of $16,479,872 occurred on June 23, 1986, but was made effective February 28, 1981. Jt. Stip. ¶ 14. The transfer was the result of an abatement of plaintiff's tax liability for the second quarter of 1980 by $16,479,872. Id. The apparent $16,479,872 overpayment was transferred to plaintiff's account for the fourth quarter of 1980. Id. Subsequent adjustments (on July 14, 1986, September 28, 1987, April 26, 1993, and November 29, 1993) increased plaintiff's tax liability by a net amount of $398,396, however. Id. ¶¶ 19, 24, 30, 33. As a result, the true amount of plaintiff's overpayment balance for the second quarter of 1980 on February 28, 1981 was reduced from $16,479,872 to $16,081,476. Jt. Exh. 28. The transfer of $16,479,872 effective February 28, 1981, rather than bringing plaintiff's net balance to

parties' Joint Stipulation included the $3,055 in plaintiff's tax liability for the second quarter of 1980 and in plaintiff's initial tax payment. Jt. Stip. ¶ 10. The Service's November 24, 1993 computation of plaintiff's tax liability excluded the $3,055.00 from plaintiff's liability and from its initial tax payment. Jt. Exh. 28. The $74,330,123 figure cited in this discussion includes the $3,055.

15. The transfer of $388,711 occurred on July 14, 1986, but was made effective November 30, 1980. Jt. Stip. ¶ 19.

16. The transfer occurred on June 23, 1986, but was made effective February 28, 1981. Jt. Stip. ¶ 14.

APPENDIX A—Continued

zero, created a deficiency in the amount of $398,396. *Id.*

Effective February 28, 1981, then, plaintiff had a principal deficiency in its excise tax payments for the second quarter of 1980 in the amount of $398,396, representing the $16,081,476 overpayment minus the $16,479,872 transfer. Jt. Stip. ¶ 37; Jt. Exh. 28. Also effective February 28, 1981, plaintiff had an accrued overpayment interest balance of $968,587. Jt. Exh. 28.

The $398,396 deficiency accrued simple interest at a rate of 12% from March 1, 1981 through January 31, 1982, and at a rate of 20% from February 1, 1982 through December 31, 1982. Supp. Jt. Stip. at 2. The amount of deficiency interest accrued in that period was $117,052. Jt. Stip. ¶ 37; Jt. Exh. 28. The accrued overpayment interest balance of $968,587 did not earn any interest (consistent with the simple interest regime). Jt. Exh. 28. Congress changed the law regarding the accrual of interest on tax overpayments and deficiencies, effective January 1, 1983, to require the daily compounding of interest. *See* Pub.L. No. 97–248, § 344(c), 96 Stat. 324 (stating that new § 6622, requiring the daily compounding of interest, "shall apply to interest accruing after December 31, 1982"). The compound interest rule permits the accrual of interest on amounts already earned as interest. 26 U.S.C. § 6622 (2001).

Effective January 1, 1983, the Service offset the $398,396 principal deficiency and the $117,052 in deficiency interest against the $968,587 of overpayment interest earned from September 1, 1980 through February 28, 1981. Jt. Exh. 28. The resulting net overpayment, on which interest accrued from January 1, 1983 through March 6, 1986, was $453,139. Jt. Exh. 28. The amount of overpayment interest earned in that period was $211,108, resulting in a total overpayment of $664,247. Jt. Exh. 28.

On June 23, 1986, the Service abated plaintiff's tax liability for the second quarter of 1980 in the amount of $16,479,872 and credited that amount to plaintiff's obligation for the fourth quarter of 1980, effective February 28, 1981. Jt. Stip. ¶ 14. The Service

APPENDIX A—Continued

determined that plaintiff was entitled to $1,436,906 as a refund, representing the interest earned by the overpayment of $16,479,872 from September 1, 1980 through February 28, 1981, and from January 1, 1983 through March 6, 1986. *Id.* ¶ 15; Jt. Exh. 28. The Service paid the $1,436,906 in interest directly to plaintiff. Jt. Stip. ¶ 15. Because of subsequent adjustments to plaintiff's tax liability, the $1,436,906 payment to plaintiff on March 6, 1986 created a deficiency of $772,659 in plaintiff's account for the second quarter of 1980. Jt. Exh. 28. The $772,659 deficiency accrued compound interest at varying rates from March 7, 1986 through July 14, 1986. Supp. Jt. Stip. at 2. The amount of deficiency interest accrued in that period was $27,704, increasing plaintiff's deficiency to $800,364. Jt. Exh. 28.

On July 14, 1986, the Service abated plaintiff's tax liability for the second quarter of 1980 in the amount of $388,711 and credited that amount to plaintiff's obligation for the third quarter of 1980, effective December 1, 1980. Jt. Stip. ¶ 19. The Service determined that plaintiff was entitled to $17,659 as a refund, representing the interest earned by the overpayment of $388,711 from September 1, 1980 through November 30, 1980 and from January 1, 1983 through July 14, 1986. *Id.* ¶ 20; Jt. Exh. 28. The Service paid the $17,659 in interest directly to plaintiff, thereby increasing plaintiff's deficiency to $818,022. Jt. Stip. ¶ 20; Jt. Exh. 28. The $818,022 deficiency accrued compound interest at varying rates from July 15, 1986 through October 9, 1987. Supp. Jt. Stip. at 2–3. The amount of deficiency interest accrued in that period was $96,657, increasing plaintiff's deficiency to $914,680. Jt. Exh. 28.

On September 28, 1987, the Service assessed additional excise tax on plaintiff for the second quarter of 1980 in the amount of $580,522. Jt. Stip. ¶ 24. The Service also assessed interest of $748,152, representing interest accrued from September 1, 1980 through September 28, 1987. *Id.* On October 9, 1987, plaintiff made a payment of $1,328,704 for the deficiency of $580,522 and the accrued deficiency interest of $748,152. *Id.* Because of subsequent adjustments to plaintiff's tax liability, plaintiff's $1,328,704

### APPENDIX A—Continued

payment created an overpayment of $414,025. Jt. Exh. 28.

Plaintiff's overpayment of $414,025 earned compound interest at varying rates from October 9, 1987 through November 8, 1993. Jt. Exh. 28; Supp. Jt. Stip. at 3. The amount of overpayment interest earned in that period was $292,292, resulting in a total overpayment of $706,317. Jt. Exh. 28. The Service assessed additional excise tax on plaintiff for the second quarter of 1980 in the amount of $73,851 on April 26, 1993. Jt. Stip. ¶ 30. On November 29, 1993, the Service abated plaintiff's excise tax liability for the second quarter of 1980 by $256,007. Jt. Stip. ¶ 33. The net decrease in plaintiff's assessed tax liability was $182,156. Jt. Stip. ¶ 32. The Service made a refund of $706,317 to plaintiff on November 5, 1993. *Id.* The refund represented the sum of the net decrease in liability of $182,156, an additional $17,423 in overpayment interest,[17] and an abatement by $506,738 of previously assessed deficiency interest.[18] *Id.*

---

17. The Service determined that plaintiff's account for the second quarter of 1980 had earned a total of $1,471,988 in overpayment interest, of which $1,454,565 had already been paid ($1,436,906 on March 6, 1986, and $17,659 on July 14, 1986). Jt. Stip. ¶¶ 15, 20, 36. Accordingly, the Service paid plaintiff $17,423, representing the difference between the $1,471,988 owed to plaintiff and the $1,454,565 already paid to plaintiff. *Id.* ¶ 36.

18. The Service determined that a total of $241,414 in deficiency interest had accrued on plaintiff's account for the second quarter of 1980, and that $748,152 in deficiency interest had previously been assessed. Jt. Stip. ¶ 35. Accordingly, the Service paid plaintiff $506,738, representing the difference between the $241,414 owed by plaintiff and the $748,152 already paid by plaintiff.